# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 13-70013

---

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

BRANDON BERNARD

Defendant-Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2014

Lyle W. Cayce
Clerk

Consolidated With
No. 13-70016

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

CHRISTOPHER ANDRE VIALVA

Defendant-Appellant

---

Appeals from the United States District Court
for the Western District of Texas

---

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Brandon Bernard and Christopher Andre Vialva were convicted of capital murder under federal law and sentenced to death. Both defendants have filed federal habeas petitions pursuant to 28 U.S.C. § 2255, asserting, *inter alia*, ineffective assistance of counsel claims, *Brady* violations and

No. 13-70013
cons. w/
No. 13-70016

cumulative error. After careful review, the district court denied an evidentiary hearing, denied the petitions, and did not certify any questions for appellate review. Both defendants now seek certificates of appealability ("COAs") pursuant to 28 U.S.C. § 2253(c)(2). For the following reasons, we DENY the COA applications.

## BACKGROUND

As this court summarized in *United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002), in June 1999, Bernard, Vialva, and other gang members planned a robbery and carjacking in Killeen, Texas. They selected Todd and Stacie Bagley (the Bagleys) as their victims and carried out their plan, which ended in the murder of the Bagleys on federal government property. Vialva shot both victims in the head, and Bernard set fire to their car to destroy the evidence. Todd Bagley died as a result of the gunshot wound and Stacie Bagley died of smoke inhalation. Vialva was convicted on three capital murder counts, and Bernard on a single count for Stacie's death. The jury found that aggravating factors out-weighed mitigating factors for each defendant and sentenced them to death pursuant to 18 U.S.C. § 3591 *et seq*. Their convictions and sentences were affirmed on appeal. *Id., cert. denied*, 539 U.S. 928, 123 S. Ct. 2572 (2003).

Bernard and Vialva each filed federal habeas petitions under Section 2255, and raised a myriad of issues, which the district court rejected. The petitioners-appellants now seek COAs pursuant to 28 U.S.C. § 2253, on many of the same issues.

## STANDARD OF REVIEW

"This court may not consider an appeal from the denial of a 28 U.S.C. § 2255 motion for relief unless either the district court or this court

2

No. 13-70013
cons. w/
No. 13-70016

issues a COA." *United States v. Hall,* 455 F.3d 508, 513 (5th Cir. 2006) (citing 28 U.S.C. § 2253(c)(1)(B)). To obtain a COA, a defendant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S. Ct. 1595, 1603 (2000)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338, 123 S. Ct. at 1040. In making the decision whether to grant a COA, this Court's examination is limited to a "threshold inquiry," which consists of "an overview of the claims in the habeas petition and a general assessment of their merits." 537 U.S. at 336, 123 S. Ct. at 1039. This court cannot deny a COA merely because it believes that the petitioners ultimately will not prevail on the merits of their claims. *Id.* On the other hand, "issuance of a COA must not be *pro forma* or a matter of course." 537 U.S. at 337, 123 S. Ct. at 1040. "While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Ramirez v. Dretke,* 398 F.3d 691, 694 (5th Cir. 2005) (alterations omitted) (internal quotation marks omitted).

## DISCUSSION

### I.   Ineffective Assistance of Counsel

3

No. 13-70013
cons. w/
No. 13-70016

An ineffective assistance of counsel claim requires a showing that (1) counsel's performance was legally deficient, and (2) the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). As to the first prong, the proper standard for evaluating counsel's performance is that of reasonably effective assistance, considering all of the circumstances existing as of the time of counsel's conduct. *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366 (1985). Counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. To establish prejudice under the second prong of the *Strickland* test, the defendant must show that his attorney's errors were so serious that they rendered "the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844 (1993). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

> Although courts may not indulge "*post hoc* rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." . . . After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland,* however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.

*Harrington v. Richter*, 562 U.S. ___, ____, 131 S. Ct. 770, 790 (2011).

No. 13-70013
cons. w/
No. 13-70016

Both petitioners' ineffectiveness claims cover nearly every aspect of counsels' representation before and during the guilt and penalty phases of trial. Yet the experience level of all four attorneys, two for each defendant, is noteworthy. This was far from the first rodeo for any of them. Vialva's attorney B. Dwight Goains had extensive relevant death penalty case experience and was Board Certified in criminal law, and his co-counsel was an experienced criminal defense attorney. Russell David Hunt, Sr., Bernard's principal attorney, had chaired three prior death penalty cases for the defense and one as a prosecutor; his son Russell D. Hunt, Jr., had tried over two dozen state felony cases and assisted his father in defending two capital cases.[1]

### A.    Bernard's Claims

#### 1.    Failure to Persuade DOJ

Bernard asserts that reasonable counsel would have pursued an early and thorough investigation aimed at developing information to convince the Government not to seek Bernard's execution. Instead, Bernard's counsel sent a two-page letter to the Government that was nearly silent about Bernard's allegedly diminished culpability or why a death sentence was inappropriate. Rejecting this contention, the district court listed the reasons that counsel did advance to DOJ in opposition to a death penalty, and it found them clear and to the point. Under *Strickland*, an attorney has a duty to make reasonable investigation, but a petitioner "who alleges a failure to investigate on the part of his counsel must allege *with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial." *Gregory v.*

---

[1] In light of these attorneys' cumulative relevant experience, it is odd, at best, that Mr. Richard Burr, a "resource attorney" on contract to the Administrative Office of the United States Courts, furnished a post-conviction affidavit challenging their competence.

No. 13-70013
cons. w/
No. 13-70016

*Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (emphasis added) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). The district court held that Bernard's claim fails to meet the *Strickland* standard because Bernard does not identify what an additional investigation would have revealed that would have convinced the Government not to seek the death penalty. Reasonable jurists could not debate the district court's disposition of this argument.

### 2.    Cross-Examination of Brown and Lewis

Bernard argues that constitutionally effective counsel would have more effectively attacked Brown and Lewis, accomplices in the crime who struck plea bargains and became the Government's primary witnesses. Because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002). Referring to the record, the district court explained in detail how counsel for both Bernard and Vialva vigorously cross-examined Brown and established that he had made many inconsistent statements, including several concerning the events on the night of the murders, and that Brown did not actually see Bernard set the Bagleys' car on fire. Counsel for each petitioner also vigorously cross-examined Lewis and established his numerous inconsistent statements, including about where he was and what he was doing on the day of the murders and that Lewis did not see Bernard set fire to the Bagleys' car. The additional details that Bernard identifies – Brown's alleged drug use, the precise location of Bernard during the murders – are unsubstantiated or cumulative of other inconsistencies brought out at trial. Bernard's ineffective assistance of counsel claim is insufficient on this point to suggest that reasonable jurists could disagree with the district court's decision.

No. 13-70013
cons. w/
No. 13-70016

### 3.    Expert Witnesses

Bernard alleges counsel performed deficiently in failing to consult independent experts regarding two areas of forensic evidence: how and where the fire in the Bagleys' car was started, and the nature and extent of Stacie Bagley's injuries and how she died.    As with Bernard's other ineffective assistance of counsel claims, he must allege with specificity what such an investigation would have revealed and how it could have altered the outcome of the trial.    *Gregory*, 601 F.3d at 352.    When the petitioner questions counsel's failure to call a witness, counsel's decision is considered to be essentially strategic, and "speculations as to what [uncalled] witnesses would have testified is too uncertain."    *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).    The district court noted:

> [t]he record in this case reflects that there was little scientific evidence linking the Defendants to the scene of the murder.  Gun shot residue was collected but not tested due to the passage of time. No fingerprints or trace evidence were obtained linking the Defendants to the Bagley's vehicle.    The only DNA evidence obtained was from the ski mask Vialva wore when he shot the Bagleys. . . . Under a wors[t] case scenario, these [proposed] experts could find evidence which did provide a physical link between the Defendants and the murder scene.

The court also pointed out the equivocal nature of both the forensic testimony admitted at trial on these issues and the expert testimony described by Bernard.  In other words, since no expert could state with certainty where the fire started or how long Stacie survived the gunshot before being burned, the court concluded the newly proffered testimony would not have helped Bernard

Trial counsel highlighted to jurors in closing argument how little physical evidence connected Bernard and Vialva to the murders.  "To support

7

No. 13-70013
cons. w/
No. 13-70016

a defense argument that the prosecution has not proved its case is sometimes better to try to cast a pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Richter*, 562 U.S. at ____, 131 S. Ct. at 790. The district court concluded that defense counsels' treatment of forensic evidence was reasonable, and there was no *Strickland* prejudice. Reasonable jurists could not disagree with the court's resolution of this issue.

### 4. Ineffective Assistance During Penalty Phase

First, Bernard argues that his trial counsel impermissibly delegated the mitigation investigation to persons who did not conduct a thorough inquiry, failed to uncover meaningful information about Bernard, and did not make adequate use of important facts disclosed by sources. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins v. Smith*, 539 U.S. 510, 523, 123 S. Ct. 2527, 2535 (2003). "[C]ounsel is entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013).

Bernard's trial counsel hired Criterion Investigations (private investigators) and gave them a list of names provided by Bernard's mother. During the punishment phase, Bernard's counsel presented several witnesses who testified that Bernard was a nice young man, had attended church, was respectful and kind, and was not a leader. Bernard's mother, a lieutenant colonel in the U.S. Army Reserve, provided information to defense counsel and

No. 13-70013
cons. w/
No. 13-70016

testified powerfully for a non-capital sentence. This testimony is outlined in the district court's opinion. For purposes of his Section 2255 motion, Bernard retained the services of Jill Miller, a mitigation specialist. Miller identified several other witnesses who would testify concerning Bernard's good nature, his non-violent tendencies, his drug and alcohol use, his tendency to follow the lead of stronger personalities, and Bernard's upbringing and background. The district court held, however, that the testimony of these witnesses, identified by Miller and touted by Bernard, is cumulative of testimony offered at trial. The decision not to present additional testimony does not constitute ineffective assistance of counsel. *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007).

This court recently issued a decision in which a COA was deemed warranted where defense counsel conducted an arguably ineffective investigation of a petitioner's mitigating circumstances. *Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014). Counsel there "unreasonably relied" on friends and family members and "declined to hire a mitigation specialist". Post-conviction research, however, uncovered family violence and Escamilla's substance abuse. *Escamilla* is based on a fact-driven application of *Wiggins*, *supra*, and does not support an equally fact-driven conclusion that under the circumstances of this case, a COA is not warranted. Reasonable jurists could not debate the district court's holding that defense counsel's mitigation investigation was reasonable and sufficiently thorough.

Second, Bernard contends that his trial counsel performed deficiently in securing mental health expertise. Bernard's trial counsel retained Dr. James Shinder to perform an evaluation, which was conducted only two days before testimony began in the guilt-innocence phase. In the district court, post-conviction counsel argued that a neuropsychologist should have been retained,

9

No. 13-70013
cons. w/
No. 13-70016

who would have diagnosed Bernard with a "mild neurocognitive dysfunction," which results in difficulty with complicated, detail-oriented tasks. As discussed above, while counsel has a duty to make reasonable investigations, counsel is entitled to balance resources with effective trial strategies. *Wiggins*, 539 U.S. at 523, 123 S. Ct. at 2535; *Garza*, 738 F.3d at 680. The district court held that "[t]he presentation of such a witness could have lessened the impact of the positive approach counsel adopted by taking away the impact of the attempt to 'humanize' Bernard for the jury". Based on the record, this aspect of the court's ruling is not debatable among reasonable jurists.

Next, Bernard argues that his trial counsel failed to adequately prepare for and challenge the Government's aggravating evidence in support of the death penalty. Specifically, Bernard points to the following evidence presented by the Government: (1) Bernard's membership in the "Bloods" street gang; (2) testimony by the Government's witness, Dr. Richard Coons, that "free world" gang members always become gang members in prison; (3) testimony that Bernard would not be a future danger in a structured prison environment; and (4) victim impact, including testimony from the Bagleys' families.

Regarding Bernard's gang membership, counsel has a duty to make only a reasonable investigation, and we "apply[] a heavy measure of deference to counsel's judgments." *Wiggins*, 539 U.S. at 523, 123 S. Ct. at 2535. Significant evidence of Bernard's gang involvement was presented by the Government. Contrary to Bernard's assertions, the evidence showed he was not a tentative or timorous member of the local Bloods gang. Brown testified, for instance, that he and fellow gang members Bernard and Vialva committed over two dozen kick-door burglaries in the Killeen, Texas area. Bernard was also involved in a confrontation with opposing gang members. Bernard's now-

No. 13-70013
cons. w/
No. 13-70016

proffered alternative strategy, offering statistics about the weak links between local gangs and their national organizations, would have furnished no material counterweight to Bernard's actual record. The district court concluded that defense counsel's treatment of this adverse evidence was not ineffective.

Bernard contends that counsel were ineffective because they did not seek a limiting instruction for the rebuttal testimony of Dr. Coons, who reviewed Vialva's records and opined on Vialva's propensity for future violence even while incarcerated. Contrary to Bernard's assertion, the Government's closing argument did not conflate Dr. Coons's testimony with Bernard's future dangerousness, although a juror could have drawn inferences. *See Bernard*, 299 F.3d at 482 n.11. Rather than invite comparisons, however, or highlight Dr. Coons's testimony by objecting or requesting a limiting instruction, counsel turned Coons's evaluation in favor of Bernard at closing:

> Think about what the Government put on when they talked to Dr. Coons. Dr. Coons is the psychiatrist from Austin [who] testified about Mr. Vialva. Do you remember what Dr. Coons said about Brandon Bernard? You're going to have to think about that one, because he didn't say one word about Brandon Bernard. He didn't say anything about Brandon Bernard that makes Brandon Bernard a future threat. And I would suggest to you that means he did that, because there's a reason. There is a reason for that.

The district court's rejection of the argument that this clearly strategic choice constituted ineffective assistance is not reasonably debatable.

Likewise, the district court rejected Bernard's claim that counsel should have put on witnesses to testify to his (relatively) good behavior while incarcerated before trial and his positive adaptation in structured environments. Such evidence was "double-edged" and, to the extent it was helpful, would have been cumulative of the positive character evidence offered

11

No. 13-70013
cons. w/
No. 13-70016

on Bernard's behalf; thus, such evidence could not form a basis for ineffective assistance. *See Coble*, 496 F.3d at 436.

This court addressed the admissibility of "victim impact" evidence on direct appeal, *see Bernard*, 299 F.3d at 479, and determined it did not affect Bernard's substantial rights. We need not address it again in this collateral action. Accordingly, jurists of reason could not debate the district court's rejection of Bernard's ineffective assistance of counsel claim on these points.

Finally, outlining a litany of complaints, Bernard alleges counsel performed deficiently in the conduct of the sentencing hearing. The district court, which also oversaw the trial, found neither deficient performance nor prejudice. Reasonable jurists could not debate this conclusion. Bernard's arguments, taken as a whole, amount to a vindication of trial counsel's strategy to "humanize" Bernard and portray him as a good kid who went astray. Counsel's witnesses conveyed the portrait to the jury on nearly every point raised in the Section 2255 petition. A plea for "more of the same" does not, in the circumstances of this case, show that the experienced trial counsel were not functioning as counsel guaranteed to Bernard by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Further, given the horrific nature of the crime, reasonable jurists could not debate that the additional, cumulative evidence would in reasonable probability have influenced the jury's balancing of aggravating and mitigating factors.

### B.    Vialva

#### 1.    Conflict of Interest

Vialva contends that his counsel was inadequate because of a conflict of interest. One attorney, Dwight Goains, applied for a job at the U.S. Attorney's

12

No. 13-70013
cons. w/
No. 13-70016

Office while the case was pending and did not secure Vialva's prior consent.[2] Under the Sixth Amendment a criminal defendant has a right to be represented by an attorney who has no conflict of interest. *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S. Ct. 1173, 1177-78 (1978). In cases other than multiple representation, the standards for testing conflict of interest arise under *Strickland*. *United States v. Newell*, 315 F.3d, 510, 516 (5th Cir. 2002). Ineffectiveness and prejudice must then be shown.

The district court held that the conflict of interest claim was procedurally barred because it was not raised on appeal and a collateral challenge to a conviction "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982). It alternatively held that the claim was without merit, because Goains obtained a waiver from Vialva on May 3, 2000, and requested a hearing in which Vialva confirmed that waiver after the court advised him of his options on May 12, 2000. A defendant may waive the right to proceed with conflict-free counsel after a hearing before the trial court. *Holloway*, 435 U.S. at 483 n.5, 98 S. Ct. at 1178 n.5. The district court found that Vialva clearly waived his right. Further, the district court noted that Goains was not offered and did not accept the job during his representation, hence "the mere fact of [defense counsel's] future employment plans did not create an actual conflict." *Garcia v. Bunnell*, 33 F.3d 1193, 1199 (9th Cir. 1994), *cert. denied*, 514 U.S. 1024 (1995). Irrespective of procedural default, there was no actual conflict, and any perceived conflict was waived at the hearing. Finally, the court held that even if the waiver was ineffective, the record shows no evidence of prejudice; Vialva makes no attempt in this court

---

[2] Goains applied in early February 2000 and was rejected a month later, but he indicated his continued interest for a position, which was offered and accepted post-trial.

No. 13-70013
cons. w/
No. 13-70016

to demonstrate prejudice. Reasonable jurists could not debate that this argument was properly rejected by the district court.

### 2. Failure to Procure Funding

Vialva claims his counsel were ineffective because they initially failed to obtain additional funding for experts above the CJA guideline of $7,500.00 and failed to ask for a continuance after additional funds were approved shortly before trial.

As the district court noted, there was little scientific evidence linking the defendants to the murder scene. Gunshot residue from the scene was never tested, and no fingerprints or trace evidence was introduced. Vialva contends that his counsel were inadequate because they did not hire additional experts to contradict the testimony of the Government's scientific witnesses. The district court concluded that it was a reasonable decision to allocate limited funds to other areas, rather than by hiring more forensic experts, particularly when the central theory of the defense was a lack of physical evidence. Counsel functioned adequately because they did prepare a proposal for additional funding that, though initially denied, was eventually partially granted. Finally, the district court held that Vialva's insistence that his counsel should have requested a continuance when additional funding was approved failed to articulate what benefit would have resulted from a continuance and speculatively presupposed that such a continuance would have been granted. The court concluded that Vialva has shown neither inadequacy nor prejudice. Reasonable jurists could not debate this conclusion.

### 3. Failure to Adequately Investigate

Vialva contends that his counsel failed to adequately investigate. As we have stated, to succeed on a claim for failure to investigate, a defendant "must

No. 13-70013
cons. w/
No. 13-70016

allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011). Further, "[a]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Richter*, 562 U.S. at ___, 131 S. Ct. at 789-90.

When requesting additional funds for defense, Vialva's lawyer explained that his counsel had gone through all the Government's evidence, compared witness testimony, inspected the crime scene, inspected the elements of the crime, and inspected the vehicle involved in the crime. Counsel also hired a fact investigator and a forensic consultant who assisted with the investigation.

Vialva contends that not enough was done to investigate the possibility of another shooter or impeachment material for Brown and Lewis, but he has not identified what further investigation could have been undertaken or what such investigation might have discovered. Vialva's counsel argued to the jury that no forensic evidence linked him to the scene, and counsel emphasized the problems with Brown's and Lewis's credibility. Had counsel delved further into the prior criminal activities of Brown and Lewis, as Vialva now suggests, he would have emphasized crimes in which Vialva was involved. Vialva also contends that his counsel should have found evidence that he was not the leader of the gang, but his leadership was established by the testimony of multiple witnesses. Based on these and numerous other facts, the district court concluded that Vialva has not alleged anything that additional investigation might have revealed that would have in reasonable probability affected the outcome of the trial; the court found no ineffectiveness. Reasonable jurists could not debate these conclusions.

No. 13-70013
cons. w/
No. 13-70016

### 4.      Failure to Present a Coherent Defense

Vialva argues that his counsel were inadequate because they did not present a coherent defense or provide adversarial testing of the Government's case.   Vialva contends that his counsel did not adequately cross-examine witnesses or develop a credible theory to counter the Government's theory of the crime.  Vialva asserts that this failure was possibly attributable, in part, to counsel's failure to develop a working relationship with Vialva or spend adequate time with him.

Despite his contention, Vialva does not propose an alternate, more persuasive defense.[3]  Vialva's defense at trial was largely an argument that the prosecution had not proved its case.   This is a viable strategy, as it "sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Richter*, 562 U.S. at ____, 131 S. Ct. at 789-90.   Vialva does not explain what further information existed about deficiencies in the Government's investigation or how such additional deficiencies could have been used to exonerate him.

As the district court also noted, brevity of consultation time with the client does not establish a claim for ineffective assistance of counsel unless a defendant can show what benefit would have resulted from more consultation time. *Schwander v. Blackburn*, 750 F.2d 494, 499 (5th Cir. 1985).  Vialva has not done so.  To the extent Vialva relies for this point on ABA Guidelines in effect at the time of trial, the Supreme Court has approved using them as a guideline to professional norms, but "not its definition."  *Bobby v. Van Hook*,

---

[3] Vialva briefly asserts that expert evidence on his "cognitive capacity" would have refuted the theory that he was the gang leader and had the ability to instigate the carjacking and murders.  The district court flatly rejected this claim on two grounds:  the accomplice testimony was contrary to this notion, and the crime required no feat of advance planning.

No. 13-70013
cons. w/
No. 13-70016

558 U.S. 4, 8, 130 S. Ct. 13, 16 (2009) (noting also that counsel's representation cannot be encompassed by a "set of detailed rules" [internal citation omitted]).

Finally, Vialva makes much of his counsel's alleged failure to adequately cross-examine Brown and Lewis. The district court addressed the cross-examination of both witnesses at some length, concluding that counsel for both defendants vigorously cross-examined the witnesses by pointing out all of their prior inconsistent statements and attempting to demonstrate a lack of credibility. The district court also lists the various favorable admissions that were elicited from both Brown and Lewis on cross-examination, including evidence that the gang did not have a leader and that one of the witnesses did not think Vialva was actually going to kill the Bagleys. Reasonable jurists could not debate the district court's conclusion that the factors Vialva raises concerning a coherent defense strategy did not prove constitutional ineffectiveness or prejudice.

### 5.    Ineffective Assistance During Penalty Phase

Vialva argues that his counsel was inadequate during the penalty phase of the trial by failing to present mitigating evidence, failing to obtain adequate funding and time to present mitigating evidence, misuse of expert testimony, and failure to secure individualized sentencing. Vialva asserts that an adequate investigation would have produced mitigating evidence including: details of Vialva's turbulent upbringing, his mother's illness, his symptoms of bipolar disorder, his ability to form friendships, and his history of illness and injury, including Attention Deficit Hyperactivity Disorder and depression.

The district court recites at length that much of the mitigating evidence was actually presented to the jury through the testimony of Vialva's friends and family and Dr. Cunningham. Witnesses testified that Vialva made people

17

laugh, got along well with others, and was generally helpful. Vialva's mother testified in detail about Vialva's turbulent upbringing. Dr. Cunningham is a well-respected mental health expert who has frequently testified for the defense in capital cases. Dr. Cunningham expanded on both the risk factors and mitigating circumstances based on his examination of Vialva's educational records, psychological records, medical records, criminal records, and other records. He highlighted the difficult circumstances of Vialva's childhood as he related that Vialva was exposed to domestic violence and criminal behavior. He noted that Vialva suffered from mild physical abnormalities and possible brain damage and had experienced a number of emotionally damaging events. Despite all the negative influences, Dr. Cunningham found Vialva had demonstrated several positive attributes including graduation from high school, a continued bond with his mother, continued protection of his younger sister, and a long-term dating relationship.

Using the mitigating factors, Dr. Cunningham countered the Government's testimony about future dangerousness with his own statistical models. Although the statistical models were subjected to vigorous cross-examination, the district court concluded that counsels' decision to call Dr. Cunningham was not ineffective because he presented strong mitigating evidence. Reasonable jurists could not debate this conclusion.

Additionally, even if counsel had been ineffective in their use of experts at the penalty stage, Vialva has not proven that he was prejudiced. The overwhelming evidence against the defendants also established that Vialva was the leader of the group. As the district court noted: "[Vialva] decided that the Bagleys had to be killed because they had seen his face. He also was the one who decided to burn the vehicle. He was the one who mercilessly shot the

No. 13-70013
cons. w/
No. 13-70016

Bagleys in their heads after they begged for their lives."  Reasonable jurists could not debate the district court's conclusion that Vialva has not shown prejudice.

Finally, Vialva contends that his counsel were defective in failing to properly advocate for severance during the sentencing proceeding.  Vialva's counsel requested a separate penalty phase trial by filing a pretrial motion, a motion at the end of jury selection, and a motion at the beginning of the penalty phase.  All of the motions were denied.  Vialva claims that the motions were "plagued by the absence of any factual or empirical support for the request" and failed to adequately address the issue of a "leader" and a "follower" being sentenced in a joint penalty phase.[4]

With the motion for severance, however, Vialva's counsel submitted an 18-page legally supported memorandum that warned of potential distortions from the jury's comparing aggravating and mitigating evidence offered by each defendant.  After failing in this initial attempt, counsel renewed the motion two more times.  Vialva now contends that his counsel should have raised statistical arguments in the motion for severance.  The suggestion such arguments would have prevailed where a well-crafted memorandum did not is pure speculation.  The district court's rejection of this ineffectiveness argument is not reasonably debatable.

## II.  *Brady* **Claims**

Both petitioners argue that the Government denied their constitutional rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), because

---

[4] When the issue of severance was raised on direct appeal, this court, albeit on plain error review, held that Bernard's mitigating evidence of his Christian conversion was "not sufficiently 'mutually antagonistic' or 'irreconcilable' to [Vialva] to suggest, much less compel, severance at the penalty phase."  *Bernard*, 299 F.3d at 475.

No. 13-70013
cons. w/
No. 13-70016

the Government did not disclose all material exculpatory or impeaching evidence to the defense. To establish a *Brady* violation, a defendant must prove that (1) the prosecution actually suppressed the evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *Brady*, 373 U.S. at 87, 83 S. Ct. at 1194; *Reed v. Stephens*, 799 F.3d 753, 781 (5th Cir. 2014). "A petitioner's *Brady* claim fails if the suppressed evidence was discoverable through reasonable due diligence." *Reed*, 739 F.3d at 781. Suppressed evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375 (1985)).

The district court held the *Brady* claims were procedurally defaulted because they could have been raised on direct appeal, and petitioners could not establish cause or prejudice for their failure to raise the claims seasonably. *See United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). We need not decide whether a COA is required on this sub-issue. Even if the claims were not procedurally defaulted, reasonable jurists could not debate the district court's further conclusion that the information referenced by petitioners was either cumulative of already-disclosed evidence, not material under *Brady*, or not suppressed by the Government.

Petitioners emphasize that despite conducting multiple interviews of Brown and Lewis over an extended period, investigators regularly declined to take or record official statements that would have revealed further contradictions with their trial testimony. The district court pointed out initially the absence of any legal authority supporting the contention that the

20

No. 13-70013
cons. w/
No. 13-70016

Government has an obligation to record or turn over to the defense every interaction with a witness, especially where the agent doubts the witness's truthfulness. *See Moore v. Illinois*, 408 U.S. 786, 795, 92 S. Ct. 2562, 2568 (1972). It is undisputed that defense counsel had access to several of Brown's and Lewis's prior statements and used those for extensive cross-examination. The court consequently held that any contradictions that such interactions might have unearthed would have been cumulative of the numerous contradictions and "lies" exposed during the cross-examinations of Brown and Lewis. *See, e.g., Spence v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996) ("[W]hen the undisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs"); *Jackson v. Johnson*, 194 F.3d 641, 648-50 (5th Cir. 1999).

Next, even if the Government was aware of and failed to turn over additional information about Brown's criminal history, petitioners have not shown how it would have been material or exculpatory. During the guilt phase of trial, Brown admitted to pleading guilty for his involvement in the Bagleys' murders. His status as a gang member, his possession of the murder weapon, and his participation in gang activities were all revealed to the jury. Had Brown's additional crimes been disclosed at trial, they could have opened the door, as the district court noted, for the Government to introduce the petitioners' involvement in crimes like the kick-burglaries, to which Brown testified in the penalty phase. Accordingly, the district court concluded that additional evidence of Brown's criminal past would not have been material, *i.e.* reasonably likely to lead the jury to a different outcome in the guilt phase.

Bernard alleges that Brown's story about how the fire was started could have been used to impeach the theory upon which the Government relied to

No. 13-70013
cons. w/
No. 13-70016

secure Bernard's death sentence.  Brown initially told the Government that Bernard started the fire by throwing a lit match into the Bagleys' car through an open window; contrary to this, the Government's forensic evidence showed that the window was closed.  Bernard argues that informing the jury of Brown's initial assertion would have undercut the Government's theory as to Bernard's involvement in the murders.  However, at trial, Brown testified that he did not actually see Bernard set the car on fire and that his prior statements had been lies.  Accordingly, the district court held that any prior statements by Brown that a match went through the car's open window are not material to the issue of Bernard's participation.  Reasonable jurists could not debate this conclusion.

Petitioners allege that the Government suppressed critical impeachment evidence regarding Brown's mental health and drug use.  They claim that the Government knew that Brown suffered from "bipolar disorder" or "serious mental illness" for which Brown was given "psychotropic medications" that were "affecting him" during Bernard's trial.  Bernard references Brown's pre-sentence investigation report and a mental health evaluation conducted after his arrest in July 1999.[5]  Noting that Brown's sentencing occurred nine months after Bernard's trial and sentencing, the district court doubted the PSR could have been suppressed.  The court held that evidence of Brown's drug use appeared in the trial testimony of fellow gang member Gregory Lynch, who said Brown smoked a "blunt" on the day of the murders.  Brown's drug use also

---

[5] Reference is made to Brown's receiving certain medications while he was in custody in a juvenile detention facility months before trial.  Without a diagnosis, however the function or effect of the medications is not probative.  Moreover, there is no proof why the Government would have been privy to otherwise confidential juvenile records.  Finally, in its Section 2255 opinion, the district court comments that nothing in Brown's testimony at trial suggested he was incompetent to testify.

22

could not be deemed "suppressed" because it would logically have been known by Bernard and Vialva as well. The court observed that Brown's recollection, even if impaired by drugs, was corroborated by other witnesses.

The court references petitioners' claim concerning allegedly suppressed mental health information and concludes "[a]s to any other types of information, [petitioners] have not presented anything other than unsupported allegations that information has been suppressed and/or that it is material." More specifically, referring to the claim that Brown "provided false information to Dr. Shinder", the court concludes that Vialva failed to show the materiality of the evidence or how it would have fortified the defense beyond already available impeachment evidence. Because Dr. Shinder's report, taken as a whole, does not support petitioners' claims, their reliance on *Banks v. Dretke*, 540 U.S. 668, 124 S. Ct. 1256 (2004), is factually as well as legally misplaced. The prosecutors in *Banks* suppressed information that a critical witness was a government informant, which was qualitatively different from other impeachment in the case. Here, the information, if suppressed, was cumulative or at best of equivocal value to the defense. Dr. Shinder's report, prepared to determine whether Brown should be certified as an adult, contains nothing about "bipolar disorder" or "serious mental illness" and in fact credits Brown with an ability to recall events accurately.

Bernard finally alleges that the suppressed evidence cannot be considered cumulative, because "at least one juror would have evaluated Brown's credibility differently had the jury known about Brown's serious mental illness and violent criminal past and [it] not been actively misled by the Government about Brown's trustworthiness." Because of our disagreements, outlined above, with the premises of this argument, we do not

23

No. 13-70013
cons. w/
No. 13-70016

accept Bernard's conclusion that the body of evidence to which he refers would have been reasonably likely to affect the outcome at trial.[6]  Reasonable jurists could not debate the district court's rejection of petitioners' *Brady* claims.

## III.   Cumulative Error

Both petitioners contend that reasonable jurists could debate whether the cumulative impact of all of the errors allegedly committed by counsel and the alleged *Brady* violations are sufficient to undermine confidence in the judgments and warrant relief.  In light of its discussion, the district court held that Bernard failed to demonstrate any constitutional error or "any cumulative errors approaching constitutional dimension."  *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.), *cert. denied*, 522 U.S. 880, 118 S. Ct. 204 (1997). *See Derden v. McNeal*, 978 F.2d 1453, 1456 (5th Cir. 1992) (en banc).  Reasonable jurists could not debate this conclusion.

## IV.   Fifth Amendment

Bernard argues that his conviction and sentence violate the Fifth Amendment because the indictment failed to allege the "culpable mental state" factors and statutory aggravating factors required by the statute and therefore did not authorize a conviction for first-degree murder eligible for the death sentence.  Bernard raised this issue on direct appeal and we determined that the challenged error did not amount to plain error based on overwhelming evidence.  *Bernard*, 299 F.3d at 488-89.  We need not address this claim again; his argument is foreclosed by precedent.  *See United States v. Robinson*,

---

[6] Vialva urges the same *Brady* claims and argues that the court abused its discretion by not ordering discovery to investigate the full extent of the Government's evidence "suppression."  The above discussion renders it unnecessary to address this point.

No. 13-70013
cons. w/
No. 13-70016

367 F.3d 278, 286 (5th Cir. 2004).   Reasonable jurists could not debate the district court's rejection of this claim.

## V.     Eighth Amendment

Vialva argues that his execution would constitute cruel and unusual punishment because, although he was 19 years old at the time of the offense, he was "operating at a much lower mental age[.]"   There is no legal support for Vialva's argument, and, as the district court noted, it has been rejected by the courts.  *See Parr v. Quarterman*, 472 F.3d 245, 261 (5th Cir. 2006), *cert. denied*, 551 U.S. 1133 (2007); *In re Garner*, 612 F.3d 533, 535-36 (6th Cir. 2010) ("The *Roper* Court did not hold that the Eighth Amendment prohibits a death sentence for an offender with a 'mental age' of less than 18.").   Reasonable jurists could not disagree with the district court's disposition of this issue.

## VI.    Discovery and Hearing

Under 28 U.S.C. § 2555(b) an evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  This court reviews for an abuse of discretion the district court's decision to deny such a hearing and further discovery.  *Clark v. Johnson*, 202 F.3d 760, 765-66 (5th Cir. 2000).  In light of the foregoing discussion, we conclude that reasonable jurists could not disagree with the district court's disposition of any of Bernard's and Vialva's claims on the voluminous record presented.   *See United States v. Hall*, 455 F.3d 508 (5th Cir. 2006).  Accordingly, there is no warrant for a COA on the court's procedural decisions.

### CONCLUSION

Based on the foregoing, Bernard's and Vialva's motions for certificates of appealability are **DENIED**.